**Guiseppe TROIA, Petitioner,**

v.

**George WIGGIN, Warden, Metropolitan Correctional Center New York, New York; and Daniel R. Lopez, Regional Chairman United States Parole Commission, Respondents.**

No. 88 Civ. 9267 (JES).

United States District Court,
S.D. New York.

Feb. 22, 1989.

Donovan & Chang, New York City, for petitioner; Charles J. Donovan, Jr., of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for respondents; Chad A. Vignola, Asst. U.S. Atty., of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

In this case, petitioner has applied for a writ of habeas corpus seeking his release on the ground that his present detention on a parole revocation warrant is in violation of 18 U.S.C. § 4213 (1982).

## BACKGROUND

To properly resolve the issues raised by petitioner's application, at least some brief recital of the factual background of petitioner's case is appropriate and perhaps essential. Petitioner was arrested and indicted on March 31, 1988 on the charges currently on trial before this Court in *United States v. Adamita,* 701 F.Supp. 85 (S.D. N.Y.1988) (*"Adamita"*). At the time of his arrest petitioner was on parole from a conviction in the Eastern District of New York.

The government's application for a detention order was granted by Magistrate Buchwald on April 19, 1988, a decision which was upheld by this Court on May 5, 1988. Shortly after that decision, petitioner's prior counsel requested that a parole revocation warrant be issued so that petitioner could get credit for time served while incarcerated on the detention order. *See* Petition at 4. That request was denied.

During the *Adamita* trial that issue was again raised after petitioner had been detained for a period of almost nine months. *See Adamita* Transcript ("Tr.") at 2406, 2410–11. The Court, reacting to that situation, suggested to the government that a parole revocation warrant be lodged so that petitioner could get credit toward his previous sentence for time served while incarcerated on the detention order. *Id.* at 2557,–60. The Court also indicated that if that were not done, the Court might have to reconsider the previous detention order. *Id.* at 2560. In that context, both the government and the petitioner agreed to the Court's suggestions.[1]

---

1. Given the aforesaid circumstances, the Court cannot accept the government's argument that petitioner has waived his right to contest the legality of his present detention. A waiver requires the intentional and voluntary relinquishment of a known right. *See Sassower v. Sheriff of Westchester County,* 824 F.2d 184, 190 (2d Cir.1987). Petitioner's acquiescence in what may ultimately prove to be an improper resolution of his dilemma does not and cannot consti-

A short time later, the Court, having become concerned based upon the trial proof that the government might not establish the one conspiracy charged in the *Adamita* indictment, felt compelled to reexamine the correctness of its previous detention orders against other defendants which rested largely on the prosecution's pre-trial proffers of proof. That circumstance, in the Court's view, tended to accentuate the due process concerns inherent in prolonged detention orders which have been expressed by this Circuit. *See United States v. Salerno,* 829 F.2d 345, 346 (2d Cir.1987) (Newman, J., concurring). As a consequence of these concerns, the Court ultimately vacated all of the detention orders with respect to defendants still on trial, and substituted in lieu thereof a form of house arrest. *See Adamita* Tr. dated December 16, 1988. At that point, of all the *Adamita* defendants, only petitioner remained in custody.

When the petition was initially heard by the Court on December 30, 1988, both the petitioner's papers and the government's oral response thereto (and indeed its later written response) were primarily concerned with the showing necessary to obtain bail pending a parole revocation hearing. *See* Transcript in *Troia v. Wiggin,* 705 F.Supp. 1014 (S.D.N.Y.1989) ("Troia Tr.") dated December 30, 1988 at 6. Although neither party disputed that such bail should be granted only in the most extraordinary cases, they disagreed as to whether this was such a case. At the conclusion of that

hearing the Court released petitioner pending a final resolution of the issues raised in his petition.[2]

On January 6, 1989 the Court heard further argument and as the transcript of that argument reflects, the Court concluded that the cases dealing with bail pending revocation proceedings were inapposite, *see Troia* Tr. dated January 6, 1989 at 3, and that the narrow issue which had to be resolved was whether the parole authorities have any discretion whatsoever to issue a summons and warrant at any time other than: (1) as soon as practicable after being advised of an alleged parole violation, or (2) after the disposition of the criminal charges giving rise to the alleged parole violation. *See* 18 U.S.C. § 4213(b). If they have no such discretion, then petitioner's detention on that warrant would be illegal and he would be entitled to his release.[3] If they did have such authority, then he should be detained unless he could demonstrate the kind of extraordinary circumstances which Court's have regarded as sufficient to require bail pending a revocation hearing. *See, e.g., Iuteri v. Nardoza,* 662 F.2d 159, 161 (2d Cir.1981).

## DISCUSSION

The Court's analysis of the present application must begin with the language of the statute itself. *See Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). If that statute is clear and unambiguous

tute an intelligent and voluntary waiver. Not only are the coercive aspects of his situation apparent, but it would indeed be anomalous to charge him with knowledge of an alleged illegality that was apparent neither to the Court nor counsel, and which presents a novel issue of law that may only be definitively resolved by the appellate process. For the same reasons, the Court finds no bad faith by the government in acceding to the Court's suggestion that the warrant be lodged during the trial.

2. While there was at least some initial confusion regarding the basis of this decision, the Court subsequently made it clear that the Court had concluded only that the legal issues raised by petitioner's application were sufficiently substantial to persuade the Court that his custody should not continue pending the Government's

opportunity to brief and the Court's final resolution of those issues. *See* Order dated December 30, 1988.

3. At least some of the initial difficulty in this case was caused by the erroneous assumption that because two very different legal principles may have the same result, *i.e.,* petitioner's release, that those concepts are the same. However, where, as here, the validity of the underlying proceedings is challenged, the appropriate remedy is a dismissal of those proceedings, which necessarily results in a release from custody. That is, of course, not the same as being released on bail which presupposes both that the proceedings upon which bail is fixed will continue to exist and that the person bailed can properly be called upon to answer those charges.

there is no need to refer to legislative history and indeed such recourse would be both inappropriate and improper. 18 U.S.C. § 4213(b) provides:

> Any summons or warrant issued under this section shall be issued by the Commission as soon as practicable after discovery of the alleged violation, except when delay is deemed necessary. Imprisonment in an institution shall not be deemed grounds for delay of such issuance, except that, in the case of any parolee charged with a criminal offense, issuance of a summons or warrant may be suspended *pending disposition of the charge.* (emphasis added)

This statute is, in the Court's view, unambiguous. It presents to the parole authorities a clear choice: (1) they *shall* issue the summons or warrant as soon as practicable or (2) they may exercise their discretion not to issue the summons or warrant pending the disposition of the criminal charges.[4] Moreover, the statute directs that imprisonment is not a basis for delay unless the parole authorities choose to await the disposition of the criminal charges. This sentence would have no meaning unless it forecloses the parole authorities from using the detention of a prisoner as an excuse for not commencing proceedings, except in a case where they choose to await the disposition of the charge.[5]

█ Moreover, construing the statute in this fashion strikes a proper balance between the rights of the parolee and the parole authorities. While parole is admittedly a legislative grace, the parolee has the right not to be subjected to arbitrary action. A parolee is therefore entitled to a prompt resolution of parole revocation charges where those charges are brought before the resolution of the criminal charge underlying the parole revocation warrant. This insures that he will not be detained for a prolonged period of time while the parole revocation charges, for which he cannot ordinarily be bailed, are resolved. *See* 18 U.S.C. § 4214(a)(1)(A); S.Rep. No. 369, 94th Cong., 2nd Sess. 18 (1975), *reprinted in* 1976 U.S.Code Cong. & Admin.News 339; *Luther v. Molina,* 627 F.2d 71, 74–75 (7th Cir.1980).

On the other hand, since parole revocation proceedings may not be pursued at all if the parolee is acquitted of the criminal charges, the statute confers the discretion upon the parole authorities to await their disposition before issuing a summons or warrant. *See* 18 U.S.C. § 4213(b). That choice, of course, causes no prejudice to the parolee, since he is not being detained on the warrant while he awaits resolution of the pending criminal charges.

█ The statute, however, does not permit the parole authorities to consider the pre-trial detention of the parolee on another charge, as they did here, *see* letter from Elaine Terenzi to Daniel R. Lopez (May 6, 1988) ("Terenzi letter") at 3, as a factor in determining *when* to issue the summons or warrant. In sum, once the parole authorities have exercised their discretion not to issue the warrant as soon as practicable, a parole revocation warrant cannot thereafter be used as substitute for a detention order. In this case, no one does or can seriously contend that the warrant was lodged as soon as practicable. Indeed it

---

4. The government makes much of the use of the word "may" but chooses to ignore the context in which that word is used, *i.e.,* "may be suspended pending," etc. Taken in context, the discretion conferred by the word "may" is modified and directed by the language which follows. The discretion given is the discretion to suspend issuance of the warrant until the disposition of criminal proceedings, or to issue the warrant forthwith. The word "may", therefore, does not give the Commission the unfettered discretion to issue the summons and warrant whenever they wish or for whatever reason they choose.

5. The legislative history, on which the government places so much reliance, does not support the government's argument. That legislative history demonstrates only that Congress intended that there be no limitation on the parole authorities decision *to bring charges,* and that failure to bring charges promptly should not be regarded as a waiver of the right to bring proceedings. *See* H.R.Conf.Rep. No. 94–838, 94th Cong., 2d Sess. 33–34 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 335, 366. It has nothing to do with *when* the proceedings must be brought once a decision to bring charges has been made.

was lodged almost nine months after petitioner was arrested on the charge giving rise to the alleged parole violation, and for the specific purpose of ensuring petitioner's continued incarceration in the face of an expressed judicial inclination to vacate a detention order. Therefore, on the facts of this case what the parole authorities have done is foreclosed by section 4213(b). Moreover, the fact that counsel for petitioner and the Court may have mistakenly believed that issuance of the warrant was an appropriate method for alleviating the hardship caused to petitioner by the detention order does not and cannot alter this conclusion.

 This is especially true since there can be no doubt that the parole authorities deliberately chose to wait until the disposition of the criminal charges against petitioner.[6] Indeed they refused petitioner's request that it be done sooner with the consequence that petitioner received no credit for the nine months he was incarcerated on the detention order. That decision was certainly a proper exercise of statutory discretion, but once made, the parole authorities were irrevocably committed to await the disposition of the criminal proceedings before commencing parole revocation proceedings.[7]

 The government also argues that petitioner should be compelled to exhaust his administrative remedies before the Court considers the merits of his petition.

*See Guida v. Nelson,* 603 F.2d 261, 262 (2d Cir.1979) (per curiam). However, it does not appear that any timely and effective remedy is available. *See Uziel v. Hadden,* 779 F.2d 4, 5 (2d Cir.1985) (per curiam). Petitioner's counsel asserts that he did ask the parole authorities to vacate the warrant, that the application was denied, and that an appeal from such a denial is not an effective remedy because it may not be available and because even assuming that it is available it cannot and will not be heard quickly. *See* Letter from Charles J. Donovan, Jr. to the Court (January 12, 1989). The government has not refuted that contention.

 In any event, the Court clearly has habeas corpus jurisdiction to correct an illegal detention by vacating the warrant at issue and any decision by the Court to defer the exercise of that power pending the exhaustion of administrative remedies is a matter of judicial discretion.[8] However, the Court sees no need to defer where, as here, the issue is solely one of statutory interpretation and where the alleged administrative remedies do not appear to be adequate to insure petitioner's prompt release from the alleged illegal detention. *See McKart v. United States,* 395 U.S. 185, 197–98, 89 S.Ct. 1657, 1664–65, 23 L.Ed.2d 194 (1969); *United States v. Quinlan,* 595 F.Supp. 1145, 1148 n. 2 (S.D.N.Y. 1984).

---

**6.** This decision was modified only because the parole authorities were determined to keep petitioner incarcerated should his detention order be vacated by this Court. *See* Terenzi letter at 3.

**7.** Petitioner has argued that he was prejudiced by the parole authorities' decision not to issue a warrant sooner because it deprived him of some pre-trial discovery and caused him to lose credit for time served. *See* Troia Tr. dated December 30, 1988 at 9–13. However, that hardship is a necessary consequence of the discretion conferred on the parole authorities by the statute. Petitioner also argues that due process and Fifth Amendment concerns are implicated where a defendant is called upon to defend parole revocation proceedings in the middle of the trial. *See* Troia Tr. dated December 30, 1988 at 10–11. The Court does not find those arguments persuasive or dispositive here. The parole authorities concededly have the discretion to issue the

warrant as soon as practicable and the fact that that time period may coincide with the trial does not render the exercise of that discretion unconstitutional. *See United States v. Markovich,* 348 F.2d 238, 240 (2d Cir.1965); *see also United States v. Rilliet,* 595 F.2d 1138, 1140 (9th Cir.1979).

**8.** It is interesting to note that even in social security cases where the Court clearly does not have subject matter jurisdiction to act prior to final agency action, the Court nevertheless has the power to address claims of procedural due process without awaiting final agency action where those claims are collateral to a claim for benefits and exhaustion would cause petitioner irreparable injury. *See Bowen v. City of New York,* 476 U.S. 467, 483, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986).

▇ The government's argument that the Court is obliged to defer to the discretion of the agency is equally unpersuasive. First, as noted above, the issue is one of statutory interpretation and is properly one for the Court to resolve. Second, although the government cites to some existing agency procedure with respect to the issues raised by the petition, *see* Declaration of Robert R. Wiggins, that procedure does not rise to the level of a definitive agency determination entitled to judicial deference. In any event, since any such procedure or interpretation would be clearly inconsistent with the statute itself, the Court would not, therefore, be obliged to afford it any deference. *See Southeastern Community College, supra,* 442 U.S. at 411, 99 S.Ct. at 2369.

### CONCLUSION

The parole authorities had no discretion to issue the warrant before the disposition of the criminal charges. It follows that since the warrant was illegally issued, petitioner's continued detention on that warrant is unlawful and that petitioner must be released. The petition for a writ of habeas corpus is granted, the parole warrant is vacated, and respondents' cross motion to dismiss is denied.

It is SO ORDERED.